United States District Court
Southern District of Texas
**ENTERED**
December 18, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| LESLIE R.,[1] § § Plaintiff. § § v. § COMMISSIONER OF SOCIAL § SECURITY, § § Defendant. § | CIVIL ACTION NO. 4:23-cv-04201 |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Leslie R. seeks judicial review of an administrative decision denying her applications for Title II disability and disability insurance benefits and Title XVI supplemental security income under the Social Security Act (the "Act"). Leslie R. and Defendant Carolyn Colvin, the Acting Commissioner of the Social Security Administration (the "Commissioner"),[2] have both filed briefs. *See* Dkts. 9, 10. Having reviewed the briefing, the record, and the applicable law, I recommend the Commissioner's decision be reversed and this matter remanded to the Commissioner for further proceedings consistent with this Memorandum and Recommendation.

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions.

[2] Carolyn Colvin became the Acting Commissioner of Social Security on November 30, 2024. Colvin is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). This is Ms. Colvin's second time serving as Acting Commissioner, having previously served as Acting Commissioner from February 14, 2013 through January 20, 2017.

## BACKGROUND

Leslie R. filed applications for benefits under Titles II and XVI of the Act on December 8, 2020, alleging disability beginning on October 1, 2020. Her applications were denied and denied again upon reconsideration. On November 16, 2022, an Administrative Law Judge ("ALJ") held a hearing. On December 22, 2022, the ALJ issued an opinion that Leslie R. was not disabled. Leslie R. filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

At Step 1, the ALJ found that Leslie R. "has not engaged in substantial gainful activity since October 1, 2020, the alleged onset date." Dkt. 7-3 at 12.

At Step 2, the ALJ found that Leslie R. "has the following severe impairments: DiGeorge syndrome, social communication disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder." *Id*. at 13.

At Step 3, the ALJ found that Leslie R. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.*

Prior to consideration of Step 4, the ALJ determined Leslie R.'s RFC as follows:

> [Leslie R.] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Leslie R.] can understand, remember and carryout simple instructions, in a work environment not requiring a specific production rate, such as assembly line work, or hourly quotas. [Leslie R.] can make simple, work-related decisions and adapt to or manage occasional changes in the work setting. [Leslie R.] can have no more than occasional interaction with supervisors and coworkers, and no interaction with the general public.

*Id.* at 14.

At Step 4, the ALJ found that Leslie R. "is unable to perform any past relevant work." *Id.* at 18.

At Step 5, the ALJ elicited testimony from a vocational expert ("VE") that "there are jobs that exist in significant numbers in the national economy that [Leslie R.] can perform." *Id.* at 19. Based on the Medical-Vocational Rules, the ALJ explained that Leslie R. "has not been under a disability." *Id.* at 20.

## DISCUSSION

Leslie R. raises several arguments for my review, but I need reach only one: that the ALJ committed harmful error in evaluating the medical opinion of Leslie R.'s treating psychiatrist, Dr. Madiha Ghayas.

Because Leslie R. filed for benefits "on or after March 27, 2017," the ALJ was required to apply the new regulations. 20 C.F.R. §§ 404.1520c, 416.920c. Through the new regulations, the Commissioner revised the standards and procedures for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. "As such, ALJs are no longer required to give controlling weight to the opinions of treating physicians." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-cv-166, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (quotation omitted). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. *See* 20 C.F.R. § 404.1520c(b)(2). In evaluating persuasiveness, the ALJ considers five factors: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion. *Id.*

4

§ 404.1520c(c)(1)–(5). The most important factors in evaluating persuasiveness are supportability and consistency. *See id.* § 404.1520c(b)(2).

With respect to "supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, No. 1:20-cv-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). "As for consistency, the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)). "Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at *5 (quotation omitted).

In formulating Leslie R.'s RFC, the ALJ made the following observations regarding Leslie R.'s treating relationship with Dr. Ghayas:

> [Leslie R.] had a psychiatric follow-up on October 26, 2020, with Dr. Madiha Ghayas (Exhibit 2F/10- 12). [Leslie R.] reported she was working at Amazon and was stressed, but she did not want to quit because she did not have another job. Medications were adjusted.
>
> Medications were continued on November 24, 2020 (Exhibit 2F/17-19). [Leslie R.] stated the increased dosage of Adderall was "working great."
>
> . . . .

> [Leslie R.] had a follow-up with Dr. Ghanas [sic] on July 23, 2021 (Exhibit 10F/68-70). Her last medication refill was in November 2020, and she was not taking any medications. Her mood was reported as low, and sleep poor. Medications were restarted.
>
> There is no subsequent evidence of psychiatric treatment with Dr. Ghanas [sic], and no evidence of treatment again until more than a year later, in August 2022.
>
> . . . .
>
> In September 2020, [Leslie R.]'s own medical source, Dr. Ghayas opined the claimant has substantial issues concentrating, reading, with processing speed, meeting deadlines, organizing, reasoning, and with stress; and she may require frequent breaks (Exhibit 10F/51-54). Pursuant to 20 CFR 404.1520c and 416.920c, the undersigned considered the opinion and finds it is not persuasive because it is not consistent with, and supported by, the overall objective findings, extent of treatment, frequency of care, and the fully developed medical record at the hearing level of review. The medical evidence indicates clinical findings that support some restriction in [Leslie R.]'s ability to perform basic work activities that limit her to simple work. In addition, the opinion was made prior to [her] alleged onset date.

Dkt. 7-3 at 16, 18.

Leslie R. advances several arguments for why the ALJ's evaluation of Dr. Ghayas's opinion was harmful error. I will discuss only one of them: the ALJ's failure to consider that Leslie R. was not taking her medications or seeking treatment because she lost her insurance. The Commissioner's own regulations state that where "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms," the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3P, 2016 WL 1119029, at *8 (Mar. 16, 2016). Yet, here, the ALJ failed to do just that.

The ALJ rejected Dr. Ghayas's opinion in part because Leslie R. "was not taking any medications." Dkt. 7-3 at 16. But Dr. Ghayas's record of Leslie R.'s July 23, 2021 visit shows that she was "not taking any medications because . . . she lost her insurance." Dkt. 7-8 at 51. The ALJ might very well have found Leslie R. disabled if she had considered that some of her reasons for rejecting Dr. Ghayas's opinion as inconsistent with Leslie R.'s extent of treatment and frequency of care could be explained by a lack of insurance. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) ("If . . . the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." (quotation omitted)). Such harmful error necessitates remand.

In closing, however, I must also note that the Commissioner has waived any argument regarding Leslie R.'s contention that the ALJ's failure to consider Leslie R.'s lack of insurance when contrasting Dr. Ghayas's opinion with Leslie R.'s supposed lack of treatment and failure to take her medications was harmful error. These arguments "to which the Commissioner has failed to respond are not off-hand, passing remarks made in the context of broader arguments." *Stokes v. Comm'r of Soc. Sec. Admin.*, No. 1:23-cv-122, 2024 WL 3831090, at *3 (N.D. Miss. Aug. 14, 2024). To the contrary, Leslie R. devoted nearly an entire page to these arguments. *See* Dkt. 9 at 18. Nor are Leslie R.'s arguments on this point "facially devoid of merit and easily disposed of without the benefit of adversarial critique." *Stokes*, 2024 WL 3831090, at *3. Yet, the Commissioner does not even allude to these arguments, much less address them. "[B]y failing to brief these issues, the Commissioner has waived any arguments [against them]." *Id*.

## CONCLUSION

For the reasons discussed above, I recommend the Commissioner's decision be reversed and this matter remanded to the Commissioner for further proceedings consistent with this Memorandum and Recommendation.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 18ᵗʰ day of December 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE